# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

P&E SOLUTIONS, LLC,

      *Plaintiff/Counterclaim Defendant*,

v.

CRESCENT POWER SYSTEMS, INC.,

      *Defendant/Counterclaimant*,

Case No. 24-1209-EFM

CRESCENT POWER SYSTEMS, INC.,

      *Third-Party Plaintiff*,

v.

NORTH AMERICAN SPECIALITY INSURANCE COMPANY,

      *Third-Party Defendant*.

## MEMORANDUM AND ORDER

Before the Court are two summary judgment motions. Defendant/Counterclaimant/Third-Party Plaintiff Crescent Power Systems, Inc. ("Crescent Power") brings the first: a Motion for Summary Judgment (Doc. 60) on Plaintiff/Counterclaim Defendant P&E Solutions, LLC ("P&E")'s breach of contract claim against it. P&E brings the second: a Motion for Partial Summary Judgment (Doc. 109) on Crescent Power's counterclaims for attorneys' fees and breach of the implied covenant of good faith and fair dealing. The parties oppose each other's motions. After addressing two threshold issues raised by both parties' motions, the Court denies both as written.

### I.    Factual and Procedural Background[1]

This case arises from a contract dispute between Crescent Power and P&E concerning the delivery of certain goods. Crescent Power is a Louisiana corporation that maintains a Texas office, and P&E is a Kansas LLC. The parties have contracted with each other before on a P&E construction project occurring in Texas, but this case concerns their contract on a P&E construction project occurring in Wisconsin.

On March 21, 2022, Crescent Power sent a proposal to P&E to supply electrical-power equipment[2] for P&E's Wisconsin project constructing a renewable gas facility in Wisconsin. P&E accepted the proposal the following day. Subsequently, on March 23, 2022, a Crescent Power representative, Marcus LeBlanc, emailed P&E representatives, Justin Swiler and Kraig Meares, a document that both parties describe as "Terms and Conditions."[3] Mr. LeBlanc pulled the Terms and Conditions from the parties' previous contract on P&E's Texas project and removed certain language before emailing it to P&E:

---

[1] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts. The facts, where controverted, are noted as such.

[2] At least one piece of this equipment, a low-voltage switchboard, was manufactured in Texas.

[3] The parties dispute whether the Terms and Conditions were a draft document or a finalized version.



Mr. Meares responded:



The parties did not discuss the Terms and Conditions further.[4] The parties proceeded with their

obligations with Steven Lira, Project Manager at Crescent Power's Texas office, as P&E's main

contact.

---

[4] As addressed below, the parties dispute whether Mr. Meares's email was sufficient acceptance to form a binding agreement to the Terms and Conditions. *See infra* Section III.A.1. To argue it was not, P&E submits an affidavit by Justin Swiler where he states: (1) "[n]o one from P&E stated verbally that the Draft Proposed Terms and Conditions were accepted;" (2) "[n]o one from P&E stated in writing that the Draft Proposed Terms and Conditions were accepted;" and (3) "Crescent Power and P&E did not agree that the Draft Proposed Terms and Conditions should be included as part of the parties' agreement." Doc. 109-4 at 2–3, ¶¶ 14–15, 17. Crescent Power objects that Mr. Swiler's affidavit is a "sham" affidavit, citing his deposition testimony where he agreed that the Terms and Conditions "would be" the terms and conditions that governed the parties' contract. Doc. 119-12 at 135:14–17. Crescent Power asks the Court to strike the affidavit and award Crescent Power expenses and attorneys' fees pursuant to Federal Rule of Civil Procedure 56(h). *See Harris v. City of Kansas City, Kan. Fire Dept.*, 2021 WL 794900, at *18 (D. Kan. Mar. 2, 2021).

Two and a half years later, P&E sued Crescent Power for breach of contract in Kansas state court on October 17, 2024. P&E alleges that Crescent Power failed to deliver certain motor control centers and other electric equipment within the required timeframe, and that the late delivery delayed the Wisconsin project and caused P&E various damages. The action was removed to this Court on November 11, 2024.

On November 27, 2024, Crescent Power filed counterclaims against P&E, alleging P&E breached their contract and the implied covenant of good faith and fair dealing to the Terms and Conditions by failing to pay invoices. Crescent Power's counterclaim for breach of the implied covenant of good faith and fair dealing has since evolved; it now alleges this breach is based on P&E's decision not to cancel the contract under Sections 10 and 11 of the Terms and Conditions. Crescent Power also seeks attorneys' fees against P&E based on its breach of contract claim.

Both parties now move for summary judgment against the other. Crescent Power moves for summary judgment against P&E on its breach of contract claim.[5] P&E moves for partial summary judgment against Crescent Power on its counterclaims for attorneys' fees and breach of the implied covenant of good faith and fair dealing. The matters are fully briefed.

---

The Court declines to strike Mr. Swiler's affidavit. First, Mr. Swiler's statement that P&E did not verbally agree to the contract is true; there is no evidence of a verbal statement of acceptance. In addition, Mr. Swiler's second and third statements may be presented as facts but are—in reality—statements of P&E's legal position on whether the email constitutes valid acceptance of the Terms and Conditions. Because these two statements present legal argument, the Court will not consider them as facts in determining whether Mr. Meares's email constitutes valid acceptance or as facts that could contradict Mr. Swiler's deposition testimony. Accordingly, the Court overrules Crescent Power's objection.

[5] In addition to its motion at Doc. 60, Crescent Power also filed a Second Motion for Summary Judgment on P&E's breach of contract claim against it absent the Court's leave to do so. *See* Doc. 110. The Court subsequently struck Crescent Power's Second Motion for Summary Judgment from the record. *P&E Sols., LLC v. Crescent Power Sys., Inc.*, 2026 WL 710128 (D. Kan. Mar. 13, 2026); Doc. 120. Thus, the Court only considers the arguments raised in Crescent Power's first summary judgment at Doc. 60.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[7] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[8] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[9] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits— conclusory allegations alone cannot survive a motion for summary judgment.[10] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[11]

## III.    Analysis

## A.    Threshold Issues Raised in Both Parties' Motions

Crescent Power's and P&E's motions both raise two threshold issues: (1) whether the parties formed a binding agreement to the Terms and Conditions; and, if so, (2) whether the Texas

---

[6] Fed. R. Civ. P. 56(a).

[7] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

choice-of-law provision in the Terms of Conditions governs. The Court addresses each threshold issue in turn.

### 1.    The Terms and Conditions Apply

Both parties agree that they formed a contract for the delivery of goods, but P&E argues it did not accept the Terms and Conditions. Thus, the first threshold issue in both parties' motions is whether the parties formed a binding agreement to the Terms and Conditions. The answer lies in the proper interpretation of the email chain where a Crescent Power representative sent the Terms and Conditions to P&E representatives after removing inapplicable "LD/ bonus language." Specifically, the parties dispute whether P&E accepted the Terms and Conditions through Mr. Meares's March 23, 2022 responsive email to Crescent Power, which reads in full: "[t]hese are good with us with the LD/Bonus taken out. The Project owner on this one is WI-RNG Hub North LLC." The parties agree that Kansas law governs this contract formation issue.

Kansas law recognizes that "people sometimes do business in an informal fashion"[12] and "[p]arties can bind themselves to a contract either orally or by informal letters or emails."[13] Even so, "to form a binding contract, there must be a meeting of the minds as to all essential terms."[14] "In determining intent to form a contract, the test is objective, rather than subjective."[15] Thus, "the inquiry will focus not on the question of whether the subjective minds of the parties have met, but

---

[12] *Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.*, 212 Kan. 730, 512 P.2d 379, 384 (1973).

[13] *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 317 P.3d 139, 146 (2014).

[14] *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 630 P.2d 1107, 1110 (1981) (citation omitted).

[15] *O'Neill*, 317 P.3d at 145 (quotation marks and citations omitted).

on whether their outward expression of assent is sufficient to form a contract."[16] A party's acceptance of essential terms "must be unconditional and unequivocal" to be binding.[17] If a party conditions a contract on it being reduced to a signed writing, there is no enforceable contract until the parties do so.[18]

Here, Crescent Power argues Mr. Meares's email constitutes P&E's acceptance of the Terms and Conditions. But P&E contends that there was no meeting of the minds between the parties on the Terms and Conditions, arguing that Mr. Meares only acknowledged a willingness to revise certain provisions from the Terms and Conditions and insisted revisions still needed to be made. Based on Mr. Meares's email, P&E argues that it could not have accepted the Terms and Conditions until Crescent Power revised the document and distributed a final draft to P&E for approval, which never occurred.

P&E reads words into Mr. Meares's two-sentence email that simply do not appear. Mr. Meares did not include any conditional language suggesting that an agreement would not be formed until Crescent Power formally revised the name of the project owner, which was the only remaining change Mr. Meares alluded to. The term "revise" or similar terminology regarding the project owner is absent entirely, as is any suggestion that Mr. Meares expected Crescent Power to send a revised document to P&E for a final signature. And even if the Court accepted P&E's invitation to impermissibly speculate on what Mr. Meares expected, "[t]he fact that the parties

---

[16] *Id.* (internal quotation marks and citations omitted).

[17] *Kan. Heart Hosp., L.L.C. v. Idbeis*, 286 Kan. 183, 184 P.3d 866, 888 (2008) (citation omitted).

[18] *O'Neill*, 317 P.3d at 146 (citing *Short v. Sunflower Plastic Pipe, Inc.*, 210 Kan. 68, 500 P.2d 39, 45 (1972)).

contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract."[19] Nothing in the email chain indicates P&E conditioned its acceptance of the Terms and Conditions on the document being memorialized in a signed writing or otherwise suggest that P&E was not already bound by these provisions. Accordingly, Mr. Meares's outward expression of assent—"these are good with us"—in his email was sufficient to form a binding agreement between the parties to the Terms and Conditions.

Looking for support outside of the email, P&E turns to the Terms and Conditions document itself and identifies several provisions to demonstrate how "absurd" it would be for P&E to have accepted them. For example, P&E points to the use of Texas law and the Texas venue provision despite this case involving a Wisconsin construction supply contract between Kansas and Louisiana entities. But Mr. Meares did not object to these provisions in the Terms and Conditions in his email. He stated, "these are good with us." P&E may not be "good" with the Terms and Conditions now, but this does not negate Mr. Meares's previous outward expression of assent to these provisions.[20] Accordingly, the parties formed a binding agreement to the Terms and Conditions such that these provisions apply to this case.[21]

---

[19] *Id.* (quotation marks and citation omitted).

[20] *See Sutherland v. Sutherland*, 187 Kan. 599, 358 P.2d 776, 785 (1961) ("The general rule is that a contracting party is bound by an agreement to which he assents, where the assent is uninfluenced by fraud, violence, undue influence, or the like, and he will not be permitted to say he did not intend to agree to its terms.").

[21] Because the Court concludes the Terms and Conditions apply based on the parties' mutual assent, the Court does not address Crescent Power's alternative argument that the Terms and Conditions apply under U.C.C. § 2-207.

### 2. Texas Substantive Law Governs the Terms and Conditions

The second threshold issue is whether the Terms and Conditions' choice-of-law provision applies. "[A] federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules."[22] Under Kansas law, "courts generally effectuate the law chosen by the parties to control the agreement."[23]

Here, Section 24 in the Terms of Conditions states "[t]his Purchase Order shall be governed by the laws of the State of Texas."[24] Crescent Power asks the Court to adhere to this choice-of-law provision and apply Texas law. P&E asks the Court to find the choice-of-law provision unenforceable, first by arguing that there is no "reasonable relation" between Texas and the Wisconsin project under Kansas choice-of-law principles, and then by morphing its argument into one under the Fourteenth Amendment's Due Process Clause of the United States Constitution. The Court first addresses P&E's constitutional argument.

To decide a constitutional choice-of-law question under the Due Process Clause, a court examines "the contacts of the State . . . with the parties and with the occurrence or transactions giving rise to the litigation."[25] The state "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally

---

[22] *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997).

[23] *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 44 P.3d 364, 375 (2002).

[24] Section 24 also states "[t]he venue for any litigation shall be in Harris County, Texas." But both parties have waived any defense of improper venue in this Court by failing to include it in a responsive pleading. *See* Fed. R. Civ. P. 12(b)(3), (h)(1).

[25] *Brenner*, 44 P.3d at 372 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981)).

unfair."[26] So long as a state meets this standard, its law may validly apply, even if another state has a materially greater interest.[27]

Here, as P&E points out, Crescent Power is a Louisiana corporation, P&E is a Kansas LLC, and the contract at issue concerns a Wisconsin project. Any one of these states may have a greater material interest than Texas, but there is a sufficient aggregation of contacts between the contract and Texas for Texas law to constitutionally apply. Crescent Power maintains an office in Texas. Crescent Power's representative, Marcus LeBlanc, communicated with Mr. Meares about the Terms and Conditions while working out of the Texas office. The Project Manager and P&E's main contact, Steven Lira, also worked out of the Texas office throughout the Wisconsin project. And at least one piece of equipment for the Wisconsin project, a low-voltage switchboard, was manufactured in Texas. In the aggregate, the Court concludes that these Texas contacts are sufficient for Due Process purposes.

Turning to P&E's "reasonable relation" argument, P&E asserts "[u]nder Kansas law, the enforceability of a contractual choice-of-law provision turns on whether the forum selected bears a reasonable relation to the contract at issue."[28] This reasonable relation test stems from the Restatement (Second) of Conflict of Laws.[29] Crescent Power disputes whether the reasonable

---

[26] *Allstate Ins. Co.*, 449 U.S. at 313.

[27] *See id.* at 308 n.10 ("[T]he Court has since abandoned the weighing-of-interests requirement."); *Brenner*, 44 P.3d at 372 ("[T]o justify application of forum law the Supreme Court only requires contacts with the forum state sufficient to create a state interest, even if another state has a materially greater interest. The Court will not weigh interests, it will just find them." (quotation marks and citation omitted)).

[28] *Brenner*, 44 P.3d at 374 (quoting *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1273 (D. Kan. 1998)).

[29] *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF L. § 187 (1969)).

relation test controls, citing a District of Kansas case casting doubt on the proposition.[30] Instead, Crescent Power argues that the question turns on a narrow exception to the general rule enforcing choice-of-law provisions: whether applying Texas law "engenders a result contrary to public policy."[31]

The Court need not decide which test applies because P&E fails both. Based on the contacts discussed above, Texas bears a reasonable relation to the parties' contract. As for the public policy exception, "[a]n agreement is against public policy if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety."[32] P&E cites no caselaw, legislative history, or other evidence that rises to the level required for this Court to find that applying the Texas choice-of-law provision is contrary to public policy.[33] Accordingly, the Court will adhere to the general rule and enforce the parties' Texas choice-of-law provision.

## B.    Crescent Power's Motion for Summary Judgment

Crescent Power moves for summary judgment on P&E's breach of contract claim against it. To do so, Crescent Power argues Section 14 in the Terms and Conditions unambiguously bars P&E from recovering consequential damages, and P&E's alleged damages against it are all

---

[30] *See TMFS Holdings, LLC v. Capace*, 2017 WL 495983, at *5 (D. Kan. Feb. 7, 2017) ("Defendants in this case mistakenly focus on language in *Brenner* discussing the *Altrutech* reasonable relation standard and argue that this test determines whether a choice of law provision should be enforced under Kansas law.").

[31] *Id.* at *4.

[32] *Hunter v. Am. Rentals, Inc.*, 189 Kan. 615, 371 P.2d 131, 133–34 (1962).

[33] *See Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685, 687–88 (1988) ("Before courts are justified in declaring the existence of public policy, it should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt." (quotation marks and citation omitted)).

consequential damages. Thus, Crescent Power asserts P&E fails to establish the damages element of its claim. P&E counters that Section 14 is limited to force majeure events that are inapplicable here. Alternatively, P&E states that the damages it seeks are largely direct, not consequential. Crescent Power's argument is premised on the Court interpreting Section 14 in its favor. Thus, the Court begins (and ends) its analysis of Crescent Power's argument by interpreting the meaning and scope of Section 14.

Under Texas law,[34] "[t]he primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument."[35] To do so, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."[36] Courts should generally give contract terms "their plain, ordinary, and generally accepted meanings."[37] A contract provision is unambiguous when it "is so worded that it can be given a definite or certain legal meaning."[38] Conversely, a contract provision is ambiguous when it "is subject to two or more reasonable interpretations."[39] "An ambiguity does not arise merely because a party offers an

---

[34] These general contract interpretation principles are also consistent with Kansas law. *See Waste Connections of Kan., Inc. v. Ritchie Corp.*, 296 Kan. 943, 298 P.3d 250, 264–65 (2013) (describing contract interpretation principles under Kansas law).

[35] *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citation omitted).

[36] *Valence v. Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (citation omitted).

[37] *Id.*

[38] *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520.

[39] *Id.*

alternative conflicting interpretation, but only when the contract is actually 'susceptible to two or more reasonable interpretations.'"[40]

Turning to the disputed contract provision, Section 14 provides:

14. FORCE MAJEURE. [Crescent Power] shall not be liable in any way for failure to perform or for delay in performance due to any act of government authority, act of God, riots, traffic accidents or similar delay in transportation beyond [Crescent Power's] control. [Crescent Power] shall notify the purchaser within a reasonable amount of time, not to exceed 2 days, after [Crescent Power] is aware of the delay. [Crescent Power] shall not be held responsible for more than the value of goods sold, nor will seller be liable for any special or consequential damages, including, but not limited to loss of revenue and profit, cost of capital or substitute production facilities, or for cover or for costs to cover.

Crescent Power does not argue that a force majeure event occurred here. Nonetheless, Crescent Power argues that Section 14 still applies. To do so, Crescent Power essentially rewrites Section 14, splits it into two sections, and relabels its provisions such that it would—hypothetically—read:

FORCE MAJEURE PROVISION. [Crescent Power] shall not be liable in any way for failure to perform or for delay in performance due to any act of government authority, act of God, riots, traffic accidents or similar delay in transportation beyond [Crescent Power's] control. [Crescent Power] shall notify the purchaser within a reasonable amount of time, not to exceed 2 days, after [Crescent Power] is aware of the delay.

LIMITATION OF DAMAGES PROVISION. [Crescent Power] shall not be held responsible for more than the value of goods sold, nor will seller be liable for any special or consequential damages, including, but not limited to loss of revenue and profit, cost of capital or substitute production facilities, or for cover or for costs to cover.[41]

Relying on its hypothetical version of Section 14, Crescent Power notes that the "force majeure provision" is clear that it is not liable in "any way" for breach resulting from such an

---

[40] *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (quoting *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)).

[41] *See* Doc. 60 at 9.

event, whereas the "limitation of damages provision" (1) specifies Crescent Power cannot be held liable for more than the value of the goods sold; and (2) carves out specific damages that it is not liable for, including consequential damages. Should both provisions apply in a force majeure event, Crescent Power argues confusion would arise as to Crescent Power's liability. Specifically, Crescent Power asserts that there would be a question of whether it was liable (1) for the value of the goods sold; (2) for direct, but not consequential, damages; or (3) not liable in any way whatsoever. Thus, Crescent Power argues that the "limitation of damages provision" must extend outside of force majeure events to ensure it is not rendered meaningless and superfluous.

At face value, however, comparing the "force majeure provision" with the "limitation of damages provision" does not present a conflict. Certainly, one who is not liable in "any way" cannot be "held responsible for more than the values of goods sold." Nor can one who is not liable in "any way" be held "liable for any special or consequential damages." To the extent the "limitation of damages provision" is superfluous, "though [courts] strive to construe contracts in a manner that avoids rendering any language superfluous, redundancies may be used for clarity, emphasis, or both."[42] The "limitation of damages provision" plausibly fits into a permissible redundancy.

And regardless of how Crescent Power rewrites Section 14 in its briefing, the original "limitation of damages provision" appears directly underneath the "Force Majeure" title, which

---

[42] *Cf. Pa. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 477 (Tex. 2016) (citation omitted) (concluding a contract provision's "juxtaposition of a clause imposing broad, nonspecific liability with a clause that identifies specific categories of losses" did not render the provision ambiguous.).

-14-

informs the Court's interpretation of Section 14's scope.[43] In addition, there is no language in the "limitation of damages provision" indicating it extends outside of force majeure events. The Court is not permitted to rewrite the provision otherwise.[44] Thus, the Court agrees with P&E's interpretation that Section 14's scope is plainly limited to force majeure events.

Even if the Court found ambiguity in the scope of Section 14, the result is the same. "When language in a contract is determined to be ambiguous, it is interpreted against the drafter."[45] Had Crescent Power wanted the "limitation of damages provision" to be read as it argues it should be, it could have drafted Section 14 the way it does so now in its briefing. Or Crescent Power could have included the "limitation of damages provision" in Section 10 of the Terms and Conditions, which addresses remedies in the event of cancellation due to late delivery. Ultimately, however, Crescent Power placed the "limitation of damages provision" in Section 14 "Force Majeure." Accordingly, Section 14 only applies in force majeure events.

Crescent Power does not assert P&E's breach of contract claim against it involves a force majeure event, and thus the Terms and Conditions do not bar P&E from seeking consequential damages.[46] Therefore, Crescent Power is not entitled to summary judgment on this basis.

---

[43] *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015) ("Generally, courts should construe contractual provisions in a manner that is consistent with the labels the parties have given them.").

[44] *See Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 162 (noting that the court "may neither rewrite the parties' contract nor add to its language").

[45] *Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 798 (Tex. App. 2006) (citation omitted); *see also Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665–67 (Tex. 1987) (concluding the "scope of the language is ambiguous" in a contract provision and construing the language against the drafter as a result).

[46] Because the Court concludes that Section 14 does not bar P&E from seeking consequential damages, the Court does not address the parties' arguments concerning whether the damages P&E seeks are consequential or direct damages.

**C.      P&E's Motion for Partial Summary Judgment**

P&E moves for partial summary judgment on Crescent Power's counterclaims against it. P&E does not move for summary judgment on Crescent Power's counterclaim for breach of contract but does move for summary judgment on Crescent Power's attached claim for attorneys' fees. P&E also moves for summary judgment on Crescent Power's counterclaim for breach of the implied covenant of good faith and fair dealing. The Court addresses each counterclaim in turn.

*1.      Crescent Power's Counterclaim for Attorneys' Fees*

P&E first argues that it is entitled to summary judgment on Crescent Power's counterclaim for attorneys' fees against it. Under Texas Civil Practice and Remedies Code Section 38.001, a party is permitted to recover attorneys' fees in a successful breach of contract claim.[47] To be entitled to attorneys' fees, Section 38.002 imposes three procedural requirements:

(1) the claimant must be represented by an attorney;

(2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and

(3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.[48]

P&E's argument lies in Section 38.002(2)'s presentment requirement and in a matter of timing. Crescent Power did not formally present its attorneys' fee claim to P&E until its attorney sent an email to P&E's attorneys on March 6, 2026, contemporaneously with its response to P&E's

---

[47] Tex. Civ. Prac. & Rem. Code Ann. § 38.001(b)(8).

[48] § 38.002.

-16-

Motion for Partial Summary Judgment. P&E asserts Texas law required this email to be sent 30 days before litigation of the claim ensued—over a year and a half ago.

Turning to Texas law, Section 38.002 itself does not specify a timeframe for its presentment requirement.[49] Texas courts are equally unhelpful because they have ruled inconsistently on the matter; some hold that a party must satisfy presentment before litigation ensues, while others hold that a party can satisfy presentment up to 30 days before judgment.[50] But Texas courts are consistent on certain principles concerning presentment, including its form and purpose. "No particular form of presentment is required."[51] And "[t]he purpose of the requirement for presentment of a claim is to allow the person against whom it is asserted an opportunity to pay a claim within 30 days after they have notice of the claim without incurring an obligation for attorney's fees."[52] Further, Section 38.005 instructs that Section 38.002 "shall be liberally construed to promote its underlying purpose."[53]

Here, Crescent Power's March 6, 2026 email to P&E serves the underlying purpose of Section 38.002's presentment requirement. The email described and attached the two unpaid invoices underlying Crescent Power's breach of contract claim and advised P&E that it would

---

[49] *See* § 38.002(2) (containing no timing requirement for presentment).

[50] *Compare*, *e.g.*, *Caldwell & Hurst v. Myers*, 714 S.W.2d 63, 65 (Tex. App. 1986) ("Proper presentment is the assertion of a claim and a request for payment made 30 days before initiation of a suit."), *with*, *e.g.*, *Peissel v. Peissel*, 620 S.W.2d 796, 800 (Tex. App. 1981) ("The rule in Texas is presentment of the claim must be made at least 30 days before trial, even if made after the suit is filed."); *see also Genender v. USA Store Fixtures, LLC*, 451 S.W.3d 916, 924 n.13 (Tex. App. 2014) (acknowledging Texas's conflicting precedent, but not reaching the issue because the party seeking attorneys' fees failed to satisfy the presentment requirement entirely).

[51] *See Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981).

[52] *Id.*

[53] § 38.005.

dismiss the attorneys' fee claim if P&E paid the balances within 30 days—by April 6, 2026. This gave P&E a 30-day opportunity to avoid incurring attorneys' fees consistent with the purpose of the presentment requirement. Neither party notified the Court that P&E took this opportunity.

Given the inconsistencies in Texas caselaw and Crescent Power's delayed formal presentment, the Court appreciates P&E's argument. But P&E asks the Court to follow the Texas courts that have read a pre-litigation timing requirement into Section 38.002 that simply does not appear in its text. What does appear in the text is Section 38.005's instruction that courts shall liberally construe Section 38.002 to promote its underlying purpose. Considering the presentment requirement's purpose is fulfilled by Crescent Power's email, the Court would violate this explicit instruction if it imposed P&E's preferred timing requirement. Accordingly, the Court will not read a pre-litigation timing requirement into Section 38.002 and denies P&E summary judgment on the attorneys' fees counterclaim.[54]

### 2.    Counterclaim for Breach of the Covenant of Good Faith and Fair Dealing

Next, P&E argues it is entitled to summary judgment on Crescent Power's counterclaim for breach of the implied covenant of good faith and fair dealing based on Sections 10 and 11 of the Terms and Conditions. Citing Kansas law, P&E argues that it had full discretion on whether to

---

[54] P&E also takes issue with Crescent Power's production of the March 6, 2026 email and its attached invoices after Rule 26 disclosures were due and the Pretrial Order was finalized in this case. P&E argues that Crescent Power's failure to quantify attorneys' fees at this stage entitles it to summary judgment. *See* Doc. 109 at 14 n.4; Doc. 122 at 13. But Crescent Power correctly notes that Federal Rule of Civil Procedure 54(d) is the procedural vehicle for obtaining attorneys' fees in federal court, which generally occurs post-judgment. *See Hovanec v. Midwest Underground, Inc.*, 2015 WL 4082863, at *1 (E.D. Tex. June 23, 2015) ("Federal Rule of Civil Procedure 54(d)(2) is the controlling procedure in this case and Texas Civil Practice & Remedies Code § 38.001 is the controlling state law."). P&E offers no substantive reply to Crescent Power's Rule 54(d) argument. Thus, the Court concludes P&E's evidentiary arguments are premature and will address them post-judgment upon Crescent Power's Rule 54(d) motion, if applicable.

cancel the contract and that "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged."[55] Crescent Power counters that the matter involves a question of fact for the jury to resolve. The Court's review of the parties' arguments, however, reveals a larger issue not briefed by either party.

Confusingly, Crescent Power bases its claim for breach of the implied covenant of good faith and fair dealing on Kansas law[56] and largely cites Kansas law to respond to P&E's argument,[57] despite previously arguing that Texas law governs the Terms and Conditions. The Court understands why P&E cites Kansas law in its motion considering that it argues Kansas law should govern. But Crescent Power's use of Kansas law in its response contradicts its own argument that Texas law governs.

Perhaps the contradiction lies in a potentially fatal flaw of bringing a claim for breach of the implied covenant of good faith and fair dealing under Texas law. Absent a special relationship, "Texas does not recognize an implied covenant of good faith and fair dealing."[58] A special

---

[55] *Law v. Law Co. Bldg. Assocs.*, 2015 WL 2131608, at *8 (Kan. Ct. App. May 1, 2015) (citation omitted); *see also Flight Concepts Ltd. P'ship v. Boeing Co.*, 819 F. Supp. 1535, 1550–51 (D. Kan. 1993) ("The concept of good faith becomes irrelevant in the interpretation of a contractual provisions which grants 'uncontrolled discretion' to one of the parties (quotation marks and citation omitted)) (applying Kansas law).

[56] *See* Doc. 116 at 16 n.3 (invoking Kansas law).

[57] Crescent Power cites two Texas cases for support on its good faith argument, but both cases apply other states' laws, not Texas law. *See State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 290, 293 (Tex. App. 1990) (applying Illinois law); *Daugherty v. Highland Cap. Mgmt., L.P.*, 2016 WL 4446158, at *12 (Tex. App. Aug. 22, 2016) (applying Delaware law).

[58] *Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 726 (Tex. App. 2011) (citations omitted); *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 490 (Tex. 2019) ("[T]his Court has been clear that absent a special relationship, parties to a contract have no duty to act in good faith.").

relationship may arise "from the element of trust necessary to accomplish the goals of the contract, or because of an imbalance of bargaining power."[59] Texas courts have recognized a special relationship between parties in insurance, oil and gas, joint venture, and agency contexts.[60] Texas courts have also recognized that the Uniform Commercial Code ("U.C.C.") imposes a similar duty to contracts it governs.[61]

Here, however, the parties' relatively straightforward contract for the delivery of goods does not seem to present a special relationship between them nor is their contract governed by the U.C.C. As previously explained, Texas law governs the Terms and Conditions, not Kansas law. While neither party applies Texas law to Crescent Power's claim for breach of the implied covenant of good faith and fair dealing in their briefing, the Court must. Because the Court determines Texas law applies, P&E is not entitled to summary judgment based on its arguments under Kansas law, and the Court must deny its motion as written.

The Court is skeptical that Crescent Power's claim for breach of the implied covenant of good faith and fair dealing is permitted under Texas law. Because the parties failed to address this issue at the summary judgment stage, the parties will need to do so no later than the jury instructions conference before trial.

**IT IS THEREFORE ORDERED** that Crescent Power's Motion for Summary Judgment (Doc. 60) is **DENIED**.

---

[59] *Sanus/New York Life Health Plan, Inc. v. Dube-Seybold-Sutherland Mgmt., Inc.*, 837 S.W.2d 191, 199 (Tex. App. 1992) (citation omitted).

[60] *English v. Fischer*, 660 S.W.2d 521, 524–25 (Tex. 1983) (Spears, J., concurring) (collecting cases).

[61] *Id.* at 525; Tex. Bus. & Com. Code Ann. § 1.304.

**IT IS FURTHER ORDERED** that P&E's Motion for Partial Summary Judgment (Doc. 109) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 8th day of May, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE