**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

P&E SOLUTIONS, LLC,

      *Plaintiff/Counterclaim
Defendant*,

v.

CRESCENT POWER SYSTEMS, INC.,

      *Defendant/Counterclaimant*,

CRESCENT POWER SYSTEMS, INC.,

      *Third-Party Plaintiff*,

v.

NORTH AMERICAN SPECIALITY
INSURANCE COMPANY,

      *Third-Party Defendant*.

Case No. 24-1209-EFM

**MEMORANDUM AND ORDER**

In this construction contract dispute, Plaintiff/Counterclaim Defendant P&E Solutions, LLC ("P&E") brings a breach of contract claim against Defendant/Counterclaimant/Third-Party Plaintiff Crescent Power Systems, Inc. ("Crescent Power"). P&E alleges Crescent Power delivered certain Motor Control Centers ("MCCs") late which delayed a P&E construction project and caused P&E to incur damages as a result. P&E retained Christopher J. Smocke to give an expert opinion on the cause of delays to P&E's project and to allocate fault for its alleged damages between P&E's subcontractors, including Crescent Power. Crescent Power brings the present

Motion to Exclude Opinions and Testimony of Christiopher J. Smocke (Doc. 107). For the reasons stated below, the Court grants Crescent Power's motion in part and denies it in part.

## I.     Factual and Procedural Background

P&E is a Kansas-based contractor who entered into a design-build contract with WI RNG Hub North, LLC, for a renewable natural gas production facility in Gillet, Wisconsin (the "Project") to be completed by February 27, 2023. The Project included construction of two buildings to house process equipment for producing renewable natural gas from dairy cow manure and dryer equipment for producing a fiber by-product. To complete the Project, P&E entered into subcontracts with various companies, including Crescent Power, Bayland Building, Inc. ("Bayland"), and Air Liquide Advanced Technologies U.S., LLC ("Air Liquide"). P&E retained Crescent Power as a material supplier to deliver electrical-power equipment to the Project location, including switchboards and MCCs.

The Project faced several schedule delays and was completed 175 days behind schedule. Relevant here, P&E alleges Crescent Power failed to deliver the MCCs on time under their contract. P&E alleges Crescent Power's late delivery, combined with its other subcontractors' contractual failures, significantly delayed the Project's overall completion. P&E further alleges that the Project's delay caused P&E to suffer $915,000 in delay damages and $1,277,550 in disruption costs.

P&E retained Mr. Smocke to review the Project, including its five-page critical path schedule, and offer opinions on the causes of the Project's delays and resulting damages to P&E. Regarding Crescent Power, Mr. Smocke opines that it delivered the MCCs 69 days late, is 41% at

fault for the first 140 days of the delay to the Project's completion,[1] and is responsible for $762,415 of P&E's total damages. Crescent Power now moves to exclude Mr. Smocke's opinions under Rule 702 of the Federal Rules of Evidence.

## II.    Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of opinion testimony from witnesses qualified as experts by their knowledge, skill, experience, training, or education. Under Rule 702, expert opinion testimony is admissible to assist the trier-of-fact in matters of scientific, technical, or otherwise specialized knowledge provided that such testimony (1) is based upon sufficient facts or data, (2) is a product of reliable principles and methods, and (3) the witness applied the principles and methods reliably to the facts of the case.[2] As these requirements demonstrate, the court is charged as a gatekeeper to admit only expert testimony that is relevant and reliable.[3] Consideration of proffered expert testimony is a flexible inquiry specific to the facts of the case at bar.[4]

---

[1] Mr. Smocke's report breaks the 175 total delay days to the Project into the first 140 days, and then into the remaining 35 days. He opines that Crescent Power, Bayland, and Air Liquide are collectively responsible for the first 140 delay days, whereas Air Liquide is solely responsible for the remaining 35 delay days. *See* Doc. 107-1 at 7.

[2] Fed. R. Evid. 702.

[3] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

[4] *Id.* at 593; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (rejecting formulaic application of reliability factors discussed in *Daubert* because "[t]oo much depends upon the particular circumstances of the particular case at issue").

### III.    Analysis

Crescent Power challenges Mr. Smocke's qualifications, the reliability of his methods, and the sufficiency of the facts and data underlying his opinions. The Court addresses each of Crescent Power's *Daubert* challenges to Mr. Smocke in turn.

### A.    Qualifications

First, Crescent Power argues that Mr. Smocke lacks the requisite qualifications to offer his opinions. Crescent Power recognizes that Mr. Smocke has over 50 years of experience in construction project management, but argues he lacks specific experience or education in conducting forensic schedule analyses and allocating fault pursuant to Association for the Advancement of Cost Engineering ("AACE") standards. P&E counters that Mr. Smocke's experience renders him sufficiently qualified to give his opinions in this case.

To be qualified in a particular field, "[a]n expert must possess 'such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth.'"[5] An expert who "possesses knowledge as to a general field" but "lacks specific knowledge does not necessarily assist the jury."[6] Thus, proposed expert testimony must fall "within the reasonable confines of [the

---

[5] *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 658 (10th Cir. 2018) (quoting *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004)).

[6] *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998) (citation omitted).

witness's] expertise."[7] As the proponent of Mr. Smocke's testimony, P&E bears the burden to show he is qualified to offer his opinions.[8]

Here, the Court concludes P&E meets its burden to show that Mr. Smocke is sufficiently qualified based on his significant experience in construction project management. Over the course of 50 years, Mr. Smocke has worked as a Senior Project Manager, Project Executive, Vice President, and President in various construction companies, for general contractors, and for construction owner's representative firms. In these roles, he managed budgets and organized schedules for several multi-million-dollar projects. He has also conducted informal mediations where he allocated responsibility between multiple parties in construction project disputes. Further, Mr. Smocke has been retained as an expert in three arbitrations and two lawsuits, offering opinions on construction delays and resulting damages. Mr. Smocke may not be familiar with or use AACE terminology, but any shortcomings in his qualifications may be sufficiently addressed in cross-examination.[9] Accordingly, the Court concludes that Mr. Smocke possesses sufficient qualifications to offer his opinions in this case.

## B.    Reliability of Methodology

Next, Crescent Power challenges the reliability of Mr. Smocke's methodology to determine the causes of the Project's delay and his methodology to allocate fault and damages between P&E's

---

[7] *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (quotation marks and citation omitted).

[8] *Rodgers*, 759 F. App'x at 658 (citing *Ralston v. Smith & Nephews Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001) ("The proponent of expert testimony bears the burden of showing the expert is qualified.").

[9] *See Daubert*, 509 US. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

subcontractors, including to Crescent Power. P&E counters that Mr. Smocke's opinions are based on reliable principles and methods that he acquired in his 50 years of experience.

To be reliable, a witness "relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[10] A court retains "broad latitude" to determine whether these factors are "reasonable measures of reliability in a particular case."[11] But "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit*[12] of the expert," particularly when there is "too great an analytical gap between the data and the opinion proffered."[13]

Crescent Power argues Mr. Smocke's opinions are *ipse dixit* because he did not conduct a forensic analysis of impacts on the Project's critical path pursuant to one of the AACE or Society of Construction Law's prescribed methods. Crescent Power asserts that these are the only reliable methods to determine the causes of delay and allocate fault in this case. Courts often consider these methods reliable to determine causation and fault in construction project disputes.[14] But P&E asserts that formally following these methods is not the only reliable method available. Both parties

---

[10] *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).

[11] *Kumho*, 526 U.S. at 139.

[12] *Ipse dixit* translates as "he himself said it" and is defined as "[s]omething asserted but not proved." *Ipse Dixit*, Black's Law Dictionary (12th ed. 2024).

[13] *Gen. Elec. Co v. Joiner*, 522 U.S. 136, 146 (1997) (citation omitted).

[14] *See*, *e.g.*, *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1233 (10th Cir. 1999) ("Courts often use [Critical Path Methodology] to resolve disputes over excusable-delay claims." (citations omitted)).

cite the Tenth Circuit's opinion in *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*[15] for support.

The *Morrison* case concerned whether a district court erred in refusing to give a jury instruction on "criticality" or using the term "critical path" in a construction delay claim under federal law.[16] To resolve the issue, the Tenth Circuit discussed Critical Path Methodology ("CPM"), "a term of art for a method of scheduling and administering construction contracts," and its common use in resolving disputes over excusable-delay claims.[17] Contrary to Crescent Power's assertions, however, *Morrison* does not stand for the proposition that a formal CPM analysis is required:

> While CPM has generated a technical terminology, the legal requirement that it is used to analyze is general and commonsensical: a contractor must prove that a delay affected not just an isolated part of a project, but its overall completion. Courts often do *not* use formal CPM terminology, but simply *an informal, CPM-like analysis* to determine whether a contractor has met its burden of proof on that general requirement.[18]

Here, Mr. Smocke's methodology for determining delay causation to the Project falls within an informal, CPM-like analysis. In his report, Mr. Smocke identifies which delays he opines affected the overall completion of the Project based on his review of the case and his experience. For example, he discusses how Crescent Power's late delivery of MCCs impacted the Project's overall completion because the switchboards could not be powered up without them, holding up

---

[15] 175 F.3d 1221 (10th Cir. 1999).

[16] *Id.* at 1231–32.

[17] *Id.* at 1232–33.

[18] *Id.* at 1233 (emphases added).

work in both Project buildings and all systems for renewable natural gas production.[19] As P&E points out, his discussion mirrors both AACE and Society of Construction Law principles on disruption and delay to construction projects.[20] Mr. Smocke may not use AACE or Society of Construction Law methods in name, but his methodology—rooted in his experience—to determine the causes the Project's delay is sufficiently CPM-like to be reliable.

Crescent Power also identifies what it considers as "blatant errors" in Mr. Smocke's opinions to demonstrate that his methodology is unreliable. First, Crescent Power argues Mr. Smocke adds days to the calendar to reach his opinion that 140 days of delay should be apportioned between Crescent Power, Bayland, and Air Liquide. P&E asserts Crescent Power simply misunderstands Mr. Smocke's testimony regarding the 140 days. Crescent Power also argues that Mr. Smocke failed to consider other delays not caused by Crescent Power in his analysis, but P&E asserts Mr. Smocke correctly considered other delays. Both of Crescent Power's concerns on the underpinnings of Mr. Smocke's opinions may be sufficiently addressed on cross-examination.[21]

The Court is concerned, however, with Mr. Smocke's methodology for allocating fault and damages between P&E's subcontractors. To do so, Mr. Smocke took the number of days he determined that Crescent Power missed its required delivery dates (69) and divided that number

---

[19] *See* Doc. 107-1 at 4, 6.

[20] *See* Soc'y of Const. Law, Delay and Disruption Protocol 10 (2d ed. 2017) ("Delay and disruption are inherently interrelated. A loss of productivity (i.e. disruption) can lead to delay and, if the impacted activities are on the critical path, that can be critical delay. Hence, the Contractor may rely upon a disruption analysis to support a critical delay claim in addition to its delay analysis. It is possible for work to be disrupted and yet for the works still to be completed by the contract completion date.").

[21] *Fish v. Kobach*, 304 F. Supp. 3d 1027, 1041 (D. Kan. 2018) ("[B]ecause a logical basis exists for the expert's opinion . . . the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony." (alterations, quotation marks, and citations omitted)).

by the total of late delivery days he determined between Crescent Power, Bayland, and Air Liquide (168) to allocate a percentage of fault to Crescent Power (41%) and ultimately conclude that Crescent Power is responsible for $762,415 in damages. When asked about this methodology, Mr. Smocke testified that he "thought through it and came up with one."[22] In its response, P&E fails to address Mr. Smocke's formula for allocating fault entirely, let alone explain how it is reliable under *Daubert*. Because P&E fails to establish this methodology is reliable, the Court will not permit Mr. Smocke to testify to his opinions allocating fault and damages between P&E's subcontractors based on his self-created formula.

### C.    Sufficiency of Underlying Facts & Data

Crescent Power also challenges the sufficiency of the facts and data underlying Mr. Smocke's opinions. First, Crescent Power argues Mr. Smocke's deposition testimony contradicts his opinion assigning 69 late delivery days to Crescent Power. This argument is similar to Crescent Power's concern over Mr. Smocke's assignment of 140 Project delay days between Crescent Power, Bayland, and Air Liquide. Likewise, the Court reaches a similar conclusion and determines that Crescent Power's concern goes to weight as opposed to admissibility and can be sufficiently addressed on cross-examination.

Second, Crescent Power again argues that Mr. Smocke's opinion is unreliable because he did not conduct a formal CPM analysis to establish that the MCCs were on the critical path to the Project. The Court rejects this argument as it did above.

---

[22] Doc. 107-2 at 173:1–10.

Third, Crescent Power challenges Mr. Smocke's allocation of fault and damages between P&E's subcontractors on sufficiency grounds two ways: (1) he failed to independently evaluate P&E's alleged damages; and (2) his allocation is purely speculative and unhelpful to the jury. The Court has already determined that P&E failed to establish that Mr. Smocke used a reliable methodology to allocate fault and damages between P&E's subcontractors. Accordingly, the Court need not address Crescent Power's challenge to Mr. Smocke's opinions allocating fault and damages on sufficiency grounds.

### IV.   Conclusion

Ultimately, the Court grants Crescent Power's motion in part and denies it in part. The Court permits Mr. Smocke to opine on the causes of the Project's delay. The Court also permits Mr. Smocke to opine on the number of late days for which he determined that P&E's subcontractors are responsible. The Court, however, bars Mr. Smocke from testifying to his opinions allocating fault and damages between P&E's subcontractors; he may not testify that Crescent Power is 41% at fault nor may he testify that Crescent Power is responsible for $762,415 of P&E's alleged damages.

**IT IS THEREFORE ORDERED** that Crescent Power's Motion for (Doc. 107) is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

Dated this 8th day of May, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-10-